```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                        HOUSTON DIVISION


MARTHA TEKLETSION,               §
Reg. No. 29327-179,              §
                                 §
              Petitioner,        §
                                 §
v.                               §    CIVIL ACTION NO. H-05-2505
                                 §
FEDERAL BUREAU OF PRISONS,       §
                                 §
              Respondent.        §
```

### MEMORANDUM OPINION AND ORDER

Martha Tekletsion, proceeding pro se, filed a Motion for Writ of Habeas Corpus Pursuant to Title 28 U.S.C. § 2241 (Docket Entry No. 1) challenging the Bureau of Prisons' cancellation of the Intensive Confinement Center ("ICC") Program.[1] Pending before the court are petitioner's Motion for Writ of Habeas Corpus (Docket Entry No. 1), petitioner's Motion for Temporary Restraining Order (Docket Entry No. 3), Respondent's Answer (Docket Entry No. 5), Respondent's Motion to Deny the Petition (Docket Entry No. 6), and Petitioner's Response (Docket Entry No. 7). After carefully reviewing the pleadings and the applicable law, the court will grant Respondent's Motion to Deny the Petition and will deny petitioner's Motion for Writ of Habeas Corpus and petitioner's Motion for Temporary Restraining Order.

---

[1] Also known as the "Boot Camp" Program or "shock incarceration."

## I. Background

In October of 2004 petitioner, after pleading guilty, was sentenced by the United States District Court for the Southern District of Texas to fifteen months' imprisonment for conspiracy to make or present a false claim in violation of 18 U.S.C. § 286. She is imprisoned at the Federal Prison Camp in Bryan, Texas. The sentencing court made the following recommendation relevant to petitioner's sentence:

> If eligible, the defendant be designated to the Intensive Confinement Center (ICC) Program for service of this sentence, as the defendant meets the criteria set forth in 18 U.S.C. § 4046 for participation in a shock incarceration program. In the alternative, the court recommends the defendant be designated to a facility near Houston, Texas.

Judgment in a Criminal Case, Case No. 4:04CR00079-004, p. 2. After petitioner was sentenced, the BOP canceled the ICC Program without notice for budgetary reasons. Petitioner has remained in the general prison population.

The ICC Program was authorized by Congress in 1990. 18 U.S.C. § 4046. As part of the Crime Control Act, Congress gave authority to the Bureau of Prisons ("BOP") to create a federal boot camp program, providing that the BOP "may place in a shock incarceration program any person who is sentenced to a term of imprisonment of more than 12, but not more than 30 months, if such person consents to that placement." Id. at § 4046(a). Participants in the program were to "adhere to a highly regimented schedule that provides

-2-

strict discipline, physical training, hard labor, drill, and ceremony characteristic of military basic training." Id. at § 4046(b).

Successful completion of the ICC Program could entitle an inmate to consideration for early release. 28 C.F.R. § 524.32. An inmate who successfully completed the institution-based component of the program ordinarily would have been eligible to serve the remainder of his or her sentence in a community-based program. Id. at § 524.32(d). An inmate who maintained successful participation in the community-based program and had a period of supervised release following his or her sentence would have been eligible for up to a six-month reduction in that sentence. Id.

On January 14, 2005, the Director of the BOP issued a memorandum stating that the BOP was terminating the ICC Program because of budgetary constraints and because of its conclusion that the program did not reduce recidivism.[2] Petitioner filed this application for a writ of habeas corpus challenging the BOP's cancellation of the ICC Program.

## II.  Analysis

Claims challenging the imposition of a sentence must be brought under 28 U.S.C. § 2255 and presented to the sentencing judge. Reyes-Requena v. United States, 243 F.3d 893, 900-01 (5th

---

[2]Memorandum from the Director of the BOP, January 14, 2005, Attachment B to Respondent's Motion to Deny Petition, Docket Entry No. 6.

Cir. 2001) ("28 U.S.C. 2255 . . . is the primary means under which a federal prisoner may collaterally attack the legality of his conviction or sentence"). Claims that challenge the method in which the sentence is executed are properly brought under 28 U.S.C. § 2241. Jeffers v. Chandler, 253 F.3d 827, 830 (5th Cir. 2001).

Petitioner requests that the court "grant relief by correcting Petitioner's sentence and imposing a sentence that would affect the sentencing Court's original intent." (Petition, p. 5) To the extent that her claim is actually for correction of her initial sentence, her habeas corpus petition must be brought under § 2255. But, however inartfully pleaded, it is clear that petitioner's complaint is not that her sentence was illegally imposed, but the manner in which the BOP is carrying out her sentence.[3] Therefore, to the extent her petition complains that the BOP improperly executed her sentence by canceling the ICC Program, it is properly

---

[3]Although courts have been somewhat inconsistent in determining whether claims complaining of the BOP's ICC Program cancellation are cognizable under § 2241 or § 2255, the prevailing view seems to be that these cases are more properly brought under § 2241. Several courts have dismissed petitions challenging the BOP's cancellation of the ICC Program brought under § 2255 on the grounds that the petitions should have been brought under § 2241. See, e.g., United States v. Wiggins, 2005 WL 3216754 (N.D. Ill. 2005); Mendez v. United States, 2005 WL 2371979 (W.D. Tex. 2005); United States v. Serrato, 2005 WL 1661831 (D. Or. 2005) (all holding that petitions complaining of the BOP's cancellation of the ICC Program should be brought under § 2241). At least two courts have granted relief under § 2255. See United States v. McClean 2005 WL 2371990 (D. Or. 2005); United States v. Coleman, 2005 WL 233825 (D. Conn. 2005) (both granting § 2255 petitions because the courts relied on the fact that the ICC Program was an option that the petitioners would be considered for).

before this court under § 2241.  See Pack v. Yusuff, 218 F.3d 448, 451 (5th Cir. 2000) (noting that a § 2241 petition "must be filed in the same district where the prisoner is incarcerated").  To prevail on her claim, petitioner must show that she "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

Petitioner argues that the ICC Program is a sentencing benefit that would have reduced her incarceration.  Petitioner claims the cancellation of the ICC Program without notice violated the notice and comment requirements for agency rule making under the Administrative Procedure Act (APA), 5 U.S.C. § 553, and the congressional mandate in the governing statute.  She also claims the cancellation violated the Due Process Clause because the court sentenced her based on misinformation.  Finally, petitioner claims that the cancellation of the ICC Program violates the *Ex Post Facto* Clause of the United States Constitution.  Petitioner requests that this court correct her sentence by imposing a sentence that would affect the sentencing court's original intent.

In addition to arguing against each of petitioner's substantive claims, respondent argues that the court lacks jurisdiction because (1) petitioner failed to exhaust her administrative remedies as required by the Prison Litigation Reform Act; (2) petitioner lacks standing to assert a challenge to the cancellation; and (3) the case is moot because the ICC Program no longer exists.

**A.    Exhaustion of Administrative Remedies**

Respondent argues that petitioner's application for writ of habeas corpus should be dismissed because she failed to exhaust her administrative remedies.  (Motion to Deny Petition, pp. 2-4)  A federal inmate seeking relief under 28 U.S.C. § 2241 must first exhaust her administrative remedies through the BOP before seeking habeas relief in federal court.  See 42 U.S.C. § 1997e(a); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994).  Exceptions to the exhaustion requirement apply only when "the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action."  Id. (citation omitted).  The petitioner bears the burden of demonstrating futility.  Id.

The BOP provides inmates a three-tiered administrative remedies process for complaints related to any aspect of confinement.  28 C.F.R. §§ 542.10-524.15.  Petitioner has failed to pursue any administrative remedies through the BOP's process but argues that any such attempt would be futile.  (Response, p. 1)  The court agrees.  The BOP has decided to end the ICC Program, and no pursuit of administrative remedies by petitioner will alter that fact or convince the BOP to change her sentence to account for the cancellation.  The BOP has taken a clear stand in defense of canceling the ICC Program and has consistently opposed habeas

corpus relief related to that cancellation.  See Fason v. Sanders, 2005 WL 2897041 at 2 (E.D. Ark. 2005) (finding that "the BOP has taken a clear, consistent, and widespread stand" against challenges to cancellation of the ICC Program).

**B.    Standing**

Respondent next argues that the case should be dismissed because petitioner lacks standing.  Respondent argues that petitioner has suffered no injury in fact and had no legally protected interest in being placed in the ICC Program.  (Motion to Deny Petition, pp. 8-11)

The requirement of standing derives from Article III of the Constitution, which limits federal court jurisdiction to cases or controversies.  Lujan v. Defenders of Wildlife, 112 S.Ct. 2130, 2136 (1992).  Petitioner must establish the three components of standing, which together constitute an "irreducible constitutional minimum."  Id.  First, petitioner must have suffered an "injury in fact" -- an invasion of a legally protected interest, which is concrete and particularized and actual and imminent.  Id.  Second, a causal connection between the injury and the conduct complained of must exist.  Id.  Third, it must be likely rather than merely speculative that the injury will be redressed by a favorable decision.  Id.

Respondent first argues that petitioner had no legally protected interest in being placed in the ICC Program even during

its existence.  The court agrees.  The Fifth Circuit has held that "[i]n the prison context, a state creates a protected liberty interest when it limits official discretion in approving or denying an inmate's request or eligibility for a prison program.  If the prison officials have wide authority and discretion, usually no liberty interest is at stake."  Welch v. Thompson, 20 F.3d 636, 639-40 (5th Cir. 1994).

The statute authorizing the ICC Program, 18 U.S.C. § 4046, does not provide petitioner with any right to placement in the ICC Program.  18 U.S.C. § 4046 (stating that the BOP "may place in shock incarceration program" individuals sentenced to more than 12 but not more than 30 months if the person consents).  Regulations that the BOP had in place implementing the ICC Program further emphasized the discretionary nature of prisoner placement, providing that "[p]lacement in the intensive confinement center program is to be made by Bureau staff in accordance with sound correctional judgment and the availability of Bureau resources." 28 C.F.R. § 524.31.  The BOP thus retained sole discretion to determine whether a prisoner was eligible for the ICC Program.  Petitioner cannot establish injury in fact to an interest that is not legally protected.

Also undermining the injury in fact leg of the standing analysis is that petitioner was not designated as eligible for the ICC Program before it was canceled.  A variety of steps occurred

prior to an inmate beginning the ICC Program. An inmate arriving at the Federal Prison Camp with the purpose of participating in the ICC Program was required to submit an Inmate Request to a staff member advising him of his desire to participate.[4] All inmates identified for the program were screened prior to admission to the ICC Program, which included screening by the Psychology, Health Services, and ICC Unit Management Staff.[5] Inmates selected for the ICC Program did not volunteer to actually participate in it until the conclusion of the week-long orientation.[6]

Petitioner was never officially screened for the ICC program by the Psychology and Health Services departments.[7] Instead, petitioner was placed on the screening list for the February 14 class and would have been screened in late January or early February of 2005. Petitioner has made no showing that she would have been found eligible for the ICC Program. Although petitioner was not screened for the class because the BOP decided to cancel the ICC Program, she nonetheless presents too speculative an injury to satisfy Constitutional scrutiny. *If* petitioner had passed the

---

[4] Institutional Supp. BRY 5390.08D, January 31, 2004, Intensive Confinement Center Program, Attachment B to Respondent's Motion to Deny Petition, Docket Entry No. 6.

[5] Id.

[6] Id.

[7] Declaration of Brian K. Berg, Case Management Coordinator at the Federal Prison Camp at Bryan, Texas, Attachment D to Respondent's Motion to Deny Petition, Docket Entry No. 6.

screening portion, and *if* petitioner had decided she still wanted to enroll after the orientation, then she might have a cognizable injury.

As the Fifth Circuit recently noted in an unpublished opinion, "[e]ligibility is not entitlement," and there is no guarantee that petitioner would have completed the admittedly rigorous program had she been deemed eligible. See Holcombe v. Fleming, 69 Fed. Appx. 658 (5th Cir. 2003) (citation omitted). See also 28 C.F.R. §§ 524.30, 524.32(a) ("eligible inmate . . . must . . . forego opportunities which may be otherwise available. . . . Opportunities that may be affected include, . . . . visitation, telephone use, legal research time, religious practices, commissary, smoking, and grooming preferences"). For the foregoing reasons, the court concludes that petitioner does not have standing to bring this suit under 18 U.S.C. § 2241, and that the court therefore lacks jurisdiction.[8]  Even if petitioner had established standing under the Constitution, the court has examined her other arguments and concludes that they fail to state a valid § 2241 claim.

C.    **The Administrative Procedures Act**

Petitioner argues that in canceling the ICC Program without notice and comment, the BOP violated the Administrative Procedures

---

[8]The court, having determined that it lacks jurisdiction because petitioner does not have standing, will not address respondent's other jurisdictional argument that the claim is moot because the ICC Program no longer exists. (Motion to Deny Petition, pp. 11-12)

Act (APA), 5 U.S.C. § 553. Before addressing this issue, however, the court must first determine if the cancellation is judicially reviewable under the APA.

Although the APA has a presumption of judicial review, it prohibits judicial review of agency decisions committed to the agency's discretion by law. 5 U.S.C. §§ 701(a)(2) & 702. The Supreme Court has held that this prohibition applies when the statute provides no meaningful standard to judge the agency's actions. Lincoln v. Vigil, 113 S.Ct. 2024, 2031 (1993). When Congress gives no statutory directives limiting an agency's discretion, an agency's allocation of a lump-sum appropriation is not subject to judicial review. Id. at 2032.

Here, although Congress authorized funding for the ICC Program, it never actually appropriated specific funds for that purpose. See 18 U.S.C. § 4046; Pub. L. No. 101-647, § 3002, 104 Stat. 4789, 4915 (1990). The ICC was funded the first year and in subsequent years through a lump-sum appropriation. See, e.g., Consolidated Appropriations Act, Pub. L. No. 109-199, 118 Stat. 3, 53-55 (2004).

Under the guidance of Lincoln, the court next looks to the statute to see if it circumscribes the BOP's discretion on how to allocate its funding. Lincoln, 113 S.Ct. at 2032. The authorizing statute provides that the BOP "*may* place in a shock incarceration program" qualifying inmates who volunteer. 18 U.S.C. § 4046

(emphasis added).  The word "may" connotes discretion.  See Lopez v. Davis, 121 S.Ct. 714, 722 (2001).  Congress used "shall" in the same section to impose obligations without discretion.  18 U.S.C. § 4046(c) ("An inmate who in the judgment of the Director of the Bureau of Prisons has successfully completed the required period of shock incarceration *shall* remain in the custody of the Bureau for such period . . . as the Bureau deems appropriate" (emphasis added)).  See also Lopez, 121 S.Ct. at 722.  The statute, therefore, does not impose any limits to the BOP's discretion on whether or not to use its funds to operate an ICC Program.  The BOP's cancellation of the ICC Program is thus not substantively reviewable.

Alternatively, even were the BOP's ICC Program cancellation judicially reviewable, the APA notice and comment provisions were not violated.  The APA requires that general notice of a proposed rule making must be published and interested persons must be allowed to comment on the proposed rule making.  5 U.S.C. § 553.  Failure to comply with the notice and comment provision of the APA is grounds to invalidate a rule covered by the APA.  National Organization of Veterans' Advocates, Inc. v. Secretary of Veterans Affairs, 260 F.3d 1365, 1375 (Fed. Cir. 2001) (citing Auer v. Robbins, 117 S.Ct. 905, 910 (1997)).  But the notice by publication requirement does not apply to "interpretative rules, general statements of policy, or rules of agency organization, procedure,

or practice." 5 U.S.C. § 553(b)(A). General statements of policy are "statements issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power." Lincoln, 113 S.Ct. at 2034 (quoting Chrysler Corp. v. Brown, 99 S.Ct. 1705, 1718 n.31 (1979)).

"Whatever else may be considered a 'general statemen[t] of policy,' the term surely includes an announcement like the one before us, that an agency will discontinue a discretionary allocation of unrestricted funds from a lump-sum appropriation." Lincoln, 113 S.Ct. at 2034. The Supreme Court has stated that "decisions to expend otherwise unrestricted funds are not, without more, subject to the notice-and-comment requirements of § 553. Lincoln, 113 S.Ct. at 2034. The BOP's cancellation of the program is a general statement of BOP policy.[9] It involved a budgetary and resource allocation decision to terminate a program that was paid for by unrestricted funds, whose operation was within the discretion of the BOP. As such, it is exempt from the notice and comment requirement as a general statement of policy under 5 U.S.C. § 553(b)(A) and is not invalid under the APA.

---

[9] The fact that the BOP promulgated implementing regulations for the ICC Program does not affect the court's analysis. The ICC Program was not established and operated by regulation. Instead, the statute creating the ICC Program was passed in 1990, and the program existed for several years without implementing regulations until the BOP published interim rules in 1996. 18 U.S.C. § 4046; 28 C.F.R. §§ 524.30-524.33. See also United States v. McClean, 2005 WL 2371990 at 4 (D. Or. 2005).

**D.    The Due Process Clause**

Petitioner also argues that eliminating the sentencing benefit of the ICC Program is a due process deprivation because her sentence was based on misinformation. To the extent petitioner's due process claim has any validity, it belongs in a § 2255 motion in the sentencing court. A challenge "directed toward the sentence itself . . . . [is] cognizable only under 28 U.S.C. § 2255." United States v. Gabor, 905 F.2d 76, 78 (5th Cir. 1990). Courts should construe a § 2241 petition attacking matters within the province of § 2255 as a § 2255 petition if the court has jurisdiction to hear the § 2255 petition. Ojo v. I.N.S., 106 F.3d 680, 683 (5th Cir. 1997).

Although petitioner was sentenced in the Southern District of Texas, she was not sentenced in this court. The clerk of the court therefore will sever out petitioner's due process claim, create a new civil action number, and assign it to the sentencing court.

**E.    The *Ex Post Facto* Clause**

Petitioner's final argument is that cancellation of the ICC Program violates the *Ex Post Facto* Clause of the Constitution, which forbids the passing of *ex post facto* laws. U.S. CONST. art. I, § 9. To establish an *ex post facto* violation, petitioner must establish that the BOP's cancellation of the ICC Program: (1) punishes as a crime an act previously committed that was not

criminal when committed; (2) makes more burdensome the punishment for a crime after its commission; or (3) deprives someone charged of a crime with a defense available when the act was committed.[10] Collins v. Youngblood, 110 S.Ct. 2715, 2724 (1990).  The focus of an *ex post facto* inquiry is on whether the change alters the definition of a crime or increases the punishment, not on whether there is some kind of disadvantage to the prisoner or affects his or her opportunity to take advantage of an early release program. See California Dept. of Corrections v. Morales, 115 S.Ct. 1597, 1602 n.3 (1995).

This court, like the vast majority of other courts addressing the issue, concludes that petitioner fails to allege an *ex post facto* violation in the BOP's cancellation of the ICC Program.  See, e.g., Almanza v. Federal Bureau of Prisons, 2006 WL 44072 (S.D. Tex. 2006); Fason v. Sanders, 2005 WL 2897041 (E.D. Ark. 2005); United States v. McClean, 2005 WL 2371990 (D. Or. 2005).  But see Castellini v. Lappin, 365 F.Supp.2d 197 (D. Mass. 2005) (finding an *ex post facto* violation).

Petitioner's *ex post facto* claim rests on the argument that the BOP's policy change increased punishment for her crime after

---

[10]Petitioner also argues that the BOP's elimination of the ICC Program impinges on her settled expectations.  (Response, p. 4)  She notes that respondents cannot prove that she would not have successfully completed the program if given the opportunity.  This misses the point.  Petitioner had no settled expectations because petitioner has not started the ICC Program.  Petitioner had not even been deemed eligible for the ICC Program, a decision that was completely within the BOP's discretion.  Moreover, petitioner, not respondent, bears the burden of proof.

its commission. But the BOP's change in policy merely deprived petitioner of the ability to take advantage of a program that, if successfully completed, might entitle her to early release. In Wottlin v. Fleming, 136 F.3d 1032 (5th Cir. 1998), the Fifth Circuit examined a retroactively applied change in BOP policy that denied early release to prisoners who were convicted of certain violent offenses and found no *ex post facto* violation. Here, like Wottlin, petitioner's eligibility for the ICC Program has always been subject to the discretion of the BOP. See Wottlin, 136 F.3d at 1037. The BOP's cancellation of the ICC Program did not change the punishment for the crime that petitioner had committed, and petitioner was never entitled to participate in the ICC Program. In fact, as discussed above, the BOP was not even required to run the ICC Program. 18 U.S.C. § 4046. See also Alexander v. Wendt, 127 Fed. Appx. 695 (5th Cir. 2005) (finding no *ex post facto* violation where a BOP determination "merely deprived [the petitioner] of an opportunity to take advantage of a discretionary early-release provision"); Fifth Circuit Rule 47-5.4. The BOP's exercise of its discretion to cancel a program that it was not required to operate, which deprived petitioner of the opportunity to participate in a program under which the BOP had complete discretion to determine her eligibility, does not constitute an *ex post fact* violation.[11]

---

[11]Petitioner requests that the court issue a temporary restraining order directing that the BOP move her to a halfway
(continued...)

### III.  Conclusion

For the reasons discussed above, petitioner is not entitled to federal habeas corpus relief under 28 U.S.C. § 2241.  The court orders as follows:

1.  The Motion for Writ of Habeas Corpus (Docket Entry No. 1) is **DENIED**.

2.  Petitioner's Motion for Temporary Restraining Order (Docket Entry No. 3) is **DENIED.**

3.  Respondent's Motion to Deny Petition (Docket Entry No. 6) is **GRANTED**.

**SIGNED** at Houston, Texas, on this the 14th day of March, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[11](...continued)
house.  Temporary or preliminary injunctions will issue only when "(1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the injunction will not disserve the public interest."  Clark v. Prichard, 812 F.2d 991, 993 (5th Cir. 1987).  The court has examined petitioner's grounds for habeas corpus relief and determined that they lack merit.  Because petitioner has not demonstrated a substantial likelihood of success on the merits, she is not entitled to injunctive relief.